IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SVENHARD'S SWEDISH BAKERY**, | Case No. 3:20-cv-1454-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **UNITED STATES BAKERY; MOUNTAIN STATES BAKERIES LLC; CENTRAL CALIFORNIA BAKING COMPANY; MURREY R. ALBERS; MICHAEL PETITT; and KENNETH HALL,** | |
| Defendants. | |

Solomon B. Cera and Thomas C. Bright, CERA LLP, 595 Market Street, Suite 1350, San Francisco, CA 94105; Joshua L. Ross and Sophia C. von Bergen, STOLL STOLL BERNE LOKTING & SHLACHTER PC, 209 SW Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Svenhard's Swedish Bakery.

Steven M. Wilker and Zachary W.L. Wright, TONKON TORP LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for United States Bakery, Mountain States Bakeries LLC, Central California Baking Company, Murrey R. Albers, Michael Petitt, and Kenneth Hall.

**Michael H. Simon, District Judge.**

Svenhard's Swedish Bakery (Svenhard's) filed for Chapter 11 bankruptcy in the Eastern

District of California. *In re Svenhard's Swedish Bakery*, Case No. 19-15277-C-11 (Bankr. E.D.

Cal.). Afterward, Svenhard's commenced this adversary proceeding against three business

entities and three individuals (collectively, Defendants). Defendants successfully moved to

withdraw the bankruptcy reference and transfer venue to the District of Oregon. After the case

arrived in this district, Svenhard's filed a First Amended Complaint (FAC), asserting eight

claims for relief: (1) successor liability; (2) lender liability; (3) breach of fiduciary duty;

(4) aiding and abetting breach of fiduciary duty; (5) fraud; (6) conversion; (7) rescission; and

(8) violation of California Business & Professions Code § 17200. ECF 26 (FAC). Defendants

moved to dismiss all eight claims. ECF 27. For the reasons that follow, the Court grants

Defendants' motion to dismiss with leave to replead.[1]

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,

Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, a federal court must accept as true all well-pleaded material facts alleged in the

complaint and construe them in the light most favorable to the non-moving party. *Wilson v.

Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*,

629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a

complaint "may not simply recite the elements of a cause of action but must contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all

---

[1] This Court also has pending two cases related to this action: *Board of Trustees of the Bakery & Confectionery Union & Industry International Pension Fund v. United States Bakery*, Case No. 3:21-cv-617-SI, and *Kerry Kurisu v. United States Bakery Supplemental Key Management Retirement Plan*, Case No. 3:21-cv-912-SI. The parties have stipulated to coordinate all three cases for discovery purposes. ECF 58.

reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Svenhard's was incorporated in California in 1959 and produced and sold specialty baked goods, including breakfast pastries and similar items. Since its founding, Svenhard's owned and operated a bakery plant in Oakland, California. In late 2013 and early 2014, Svenhard's was no longer profitable and needed capital to modernize its plant and pay debts in arrears. Among other debts, Svenhard's was in default with its secured bank lender, Bay Commercial Bank (BCB).

Defendant United States Bakery (US Bakery) is an Oregon corporation that produces and sells baked goods, mainly in the Pacific Northwest. US Bakery operates under the name "Franz," among other names. US Bakery also owns several regional brands of bread and cookie products and other bakeries. Since 1994, US Bakery had been a distributor of Svenhard's. Defendants Mountain States Bakeries LLC (Mountain) and Central California Baking Company (CCBC) are

wholly owned subsidiaries of US Bakery. Defendant Murrey Robert Albers (Albers) is the Chief Executive Officer (CEO) of US Bakery. Defendant Michael Petitt (Petitt) is the Chief Financial Officer (CFO) of US Bakery. Defendant Kenneth Hall (Hall) is an employee of US Bakery.

In April 2014, Svenhard's and US Bakery signed a document titled, "Transaction Background and Summary of Terms" (**Term Sheet**). ECF 27-1 at 1-3. This nonbinding **Term Sheet** described the significant events that the parties anticipated: US Bakery would purchase a facility in Exeter, California and lease that facility to Svenhard's so that Svenhard's could move its operations from Oakland to Exeter; US Bakery would purchase Svenhard's "brand" by acquiring its recipes and trademarks for an advance payment of $500,000 and an extra payment based on the results of a third-party appraisal; US Bakery would license back to Svenhard's the intellectual property that US Bakery had acquired so that Svenhard's could continue its operations; US Bakery would become an exclusive distributor of Svenhard's products manufactured at Oakland or Exeter; and at the end of the five-year term of the anticipated implementing agreements, US Bakery would pay a supplemental payment for its purchase of Svenhard's intellectual property based on a formula using Svenhard's earnings during that period.

The parties also contemplated that a subsidiary of US Bakery would be the party doing the distribution of products made by Svenhard's and that Svenhard's might have some representation on the board of directors of that subsidiary. No provision in the nonbinding **Term Sheet** called for US Bakery to assume any of Svenhard's liabilities. Instead, the anticipated transactions were structured as an "asset sale and leaseback" with a five-year "earn-out" period during which Svenhard's could enhance the ultimate purchase price that it received.

Also in April 2014, Svenhard's and US Bakery signed a Recipes and Transfer Processes Transfer Agreement; Distribution Rights (**Bridge Agreement** or **Recipes Transfer Agreement**), under which US Bakery purchased certain intellectual property (namely, recipes and other "know how") (ECF 27-1 at 7-8). That same month, Svenhard's and Mountain signed an Intellectual Property Rights Purchase Agreement (**IP Purchase Agreement**), under which Mountain acquired Svenhard's trademarks, recipes, and other related intellectual property (ECF 27-1 at 9-16).

In August 2014, Svenhard's and US Bakery signed a **Distribution Agreement**, under which US Bakery would distribute Svenhard's products for five years (ECF 27-1 at 4-6). Also in August 2014, Svenhard's and Mountain signed both a **License Agreement**, under which Mountain would license back to Svenhard's certain intellectual property to be used in Svenhard's ongoing operations for a term of five years (ECF 27-1 at 17-23), and a Contingent Supplemental Payment Agreement (**Contingent Payment Agreement**), under which Mountain would pay Svenhard's a supplemental payment based on Svenhard's results of operations during the next five years at the end of the license term (ECF 27-1 at 24-25). Svenhard's, US Bakery, and Mountain also signed in August 2014 a **Closing Agreement**, referencing these agreements (as well as an **Option Agreement**), characterizing all agreements as "an integral part of related transactions" subject to cross-defaults, summarizing the results of the third-party trademark appraisal, and agreeing to a purchase price for all acquired assets (ECF 27-1 at 26-28).

In summary, as of August 2014, Svenhard's sold certain assets to US Bakery or Mountain, and Svenhard's took back certain licenses that allowed it to continue to operate its business so that in 2019, at the end of the five-year license period, Svenhard's could earn a supplemental payment greater than the base payments that US Bakery and Mountain first paid to

acquire Svenhard's assets. US Bakery also both made loans to Svenhard's and guaranteed new loans from others to Svenhard's so that Svenhard's could revive its faltering operations and hopefully earn a supplemental payment at the end of the license period.[2]

Svenhard's alleges that between 2014 and 2019, Defendants caused Svenhard's business to continue to suffer. In November 2019, Defendants engaged in self-help repossession of the collateral for Svenhard's unpaid debts and filed a notice of UCC foreclosure sale, resulting in US Bakery and its affiliates fully assuming Svenhard's operations. On December 19, 2019, Svenhard's filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of California. Svenhard's contends that Defendants' conduct drove Svenhard's into bankruptcy and deprived the company's creditors of millions of dollars owed to them. Svenhard's also contends that US Bakery obtained Svenhard's assets for inadequate consideration. Svenhard's further alleges that US Bakery, through its CEO Albers, insisted on negotiating key agreements not with David Kunkel, Svenhard's Chief Operating Officer (COO) since 2008, who had deep knowledge of Svenhard's business and personally knew the US Bakery personnel, but with Michelle Barnett (Barnett), now deceased, who was then President of Svenhard's and the niece of Svenhard's founder, Ronny Svenhard. According to Svenhard's, Barnett lacked Kunkel's longstanding involvement in the business.

Svenhard's also contends that the purchase price paid by US Bakery was left in the control of Defendants because it was largely based on an appraisal performed by a US Bakery-selected third-party appraiser. Svenhard's further alleges that Defendants had no intention of

---

[2] In February 2016, Svenhard's, US Bakery, and Mountain signed an **Amended and Restated Loan Agreement** (ECF 27-1 at 39-47). In July 2017, Svenhard's and US Bakery signed a **Guaranty Reimbursement Agreement** (ECF 27-1 at 29-33) and a **Security Agreement** (ECF 27-1 at 33-38).

allowing Svenhard's to generate any significant earnings during the five-year earning period. This allowed Defendants to acquire Svenhard's valuable intellectual property and recipes, while paying only a minimal amount for those assets. Svenhard's adds that, by the time these transactions were concluded, Svenhard's received only $3.5 million for its business, despite being led to believe by US Barkey's CEO, Albers, that the ultimate consideration would be in the range of $15 million.

## CHOICE OF LAW

The parties agree, at least for purposes of the pending motion, that Oregon law governs Svenhard's first, third, fourth, and fifth claims, which allege successor liability, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and fraud. The parties do not agree, however, on which law governs Svenhard's second, sixth, seventh, and eighth claims, which allege lender liability, conversion, rescission, and violation of California's Business and Professions Code § 17200. Svenhard's contends that for these latter claims, California law governs, while Defendants argue that Oregon law applies. For the reasons that follow, the Court concludes that Oregon law applies to all claims asserted by Svenhard's in this lawsuit.

The Court begins its choice of law analysis by noting that Svenhard's originally filed this lawsuit in federal court in California and that none of Svenhard's claims rely on federal law for the rule of decision. Although a district court applying state law will usually employ the choice of law rules of the forum state in the place of initial filing, that is not the case when a plaintiff has breached an agreement to bring suit in another forum. In its unanimous decision in *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013), the Supreme Court addressed the appropriate choice of law analysis when venue for a case is transferred to a district court in another state to enforce the parties' agreed-upon choice of forum. *Id*. at 64-65. The Supreme Court explained: "When a party bound by a forum-selection clause flouts its

contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules" but will apply the rule from *Klaxon Co. v. Stentor Electric Manufacturing Co*., 313 U.S. 487, 496 (1941), that requires a district court to apply the choice of law rules of the state in which it sits. *Atlantic Marine*, 571 U.S. at 65. Svenhard's expressly agreed to Portland, Oregon as the exclusive forum for all litigation arising from or relating to the agreements or transactions at issue.

The **IP Purchase Agreement** states: "This Agreement will be governed by and construed in accordance with the internal law of the State of Oregon without giving effect to any choice- or conflict-of-law provision or rule." ECF 27-1 at 16 (¶ 9.8). It also provides: "Any dispute arising out of or based upon this Agreement or the Transactions must be instituted in the state and federal courts located in Portland, Oregon, and each party irrevocably submits to the exclusive jurisdiction of such courts." *Id*. ¶ 9.9. Similarly, the **Distribution Agreement** provides: "The Agreement is governed exclusively by Oregon law, excluding conflict-of-law principles." ECF 27-1 at 5 (¶ 11). The **License Agreement** also states that it "will be interpreted and construed in accordance with the provisions of the Federal Trademark Act of 1946, as amended 15 U.S.C. § 1051 *et seq*. and the laws of the State of Oregon, regardless of its choice of law provisions," and it also provides for the exclusive jurisdiction in the federal and state courts in Portland, Oregon. ECF 27-1 at 21 (¶¶ 10.7 and 10.8).

In addition, the **Amended and Restated Loan Agreement**, signed in 2016, states: "This Agreement will be interpreted and construed in accordance with the laws of the State of Oregon, regardless of its choice of law provisions," and it too provides for exclusive jurisdiction in the federal and state courts in Portland, Oregon. ECF 27-1 at 45 (¶¶ 8.7 and 8.8). The **Guaranty Agreement**, signed in 2017 also provides that it "will be governed by and construed according to

the laws of the State of Oregon, without reference to any conflict-of-laws principles" and that the state and federal courts in Portland, Oregon will have exclusive jurisdiction over "[a]ll disputes arising out of or relating to this Agreement." ECF 27-1 at 31 (¶ 11). The **Security Agreement**, also signed in 2017, provides similarly. ECF 27-1 at 36 (¶ 149).[3]

In 2001, Oregon codified its choice of law rules in Chapter 15 of the Oregon Revised Statutes (ORS). Oregon law provides, in relevant part: "the *contractual rights and duties* of the parties are governed by the law or laws that the parties have chosen." ORS § 15.350(1) (emphasis added). This rule appears under the heading "Choice of Law for Contracts." Under the heading "Choice of Law for Torts and Other Noncontractual Claims," Oregon law looks generally to what conduct caused the injury and where the conduct occurred. ORS § 15.415. Further, "[i]f injurious conduct occurs in more than one state, the state where the conduct occurred that is primarily responsible for the injury is the state where the injurious conduct occurred." ORS § 15.415(1).

In their agreements, the parties agreed to use Oregon substantive law to interpret and construe the relevant contracts. Svenhard's, however, did not assert any direct claims for breach of contract (whether based on express or implied terms). Instead, as noted, Svenhard's alleged only claims of successor liability, lender liability, breach of fiduciary duty, fraud, conversion, rescission, and violation of a California law governing unfair competition. The Court considers it significant, however, that *all* claims asserted by Svenhard's depend on the formation, existence, and construction of the parties' several interrelated agreements, and the primary relief that Svenhard's seeks is *rescission* of those agreements and return to the status *quo ante*.

---

[3] The other agreements do not contain either a choice of law provision or a forum selection clause.

Oregon's statutory choice of law rules do not seem to address this situation. In *Portfolio Recovery Associates, LLC v. Sanders*, 366 Or. 355 (2020), the Oregon Supreme Court explained that when there is a choice-of-law scenario that the statutes do not explicitly resolve, it may be appropriate to look to common law conflicts principles to :fill that gap." *Id*. at 374. The most relevant principle of the common law states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

Restatement (Second) of Conflict of Law § 187(1) (1971). Thus, because Svenhard's seeks largely to rescind its various contractual obligations and the parties could have resolved this choice of law dispute by an explicit provision directed to that issue, the Court will apply the substantive law expressly chosen by the parties to govern their contractual rights and duties, the law of Oregon.

## DISCUSSION

### A. Plaintiff's First Claim: Successor Liability

Under Oregon law, "[t]he general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor." *Gonzalez v. Standard Tools & Equip. Co*., 270 Or. App. 394, 397 (Or. App. 2015) (quoting *Erickson v. Grande Ronde Lumber Co*., 162 Or. 556, 568 (Or. 1939)). But

> there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Gonzalez*, 270 Or. App. at 397. Svenhard's argues that the first three exceptions apply. ECF 31 at 23.

The first exception requires that the purchaser expressly or impliedly agreed to assume the seller's (here, Svenhard's) debts. Svenhard's identifies negotiations that occurred in September 2019 about the official takeover of Svehard's operations by US Bakery. Svenhard's alleges that during a meeting on September 4, 2019, US Bakery's CEO, Albers, told Svenhard's CEO, Ronny Svenhard, that US Bakery "would pay all of Svenhard's liabilities." FAC ¶ 69. Albers "specifically said [US Bakery] would 'pay all suppliers' of Svenhard's (meaning all trade accounts payable), arrearages on health insurance payment delinquencies under Svenhard's collective bargaining agreements with the Teamster's union, and for the health insurance of Svenhard's production workforce in Exeter and for certain former DSD sales representatives." *Id*. Svenhard's further alleges that shortly after this meeting, US Bakery's attorneys prepared a form of release agreement under which Svenhard's would release all claims against US Bakery and Mountain, but Svenhard's refused to sign that release. *Id*. ¶ 72. On October 23, 2019, US Bakery's attorney told Svenhard's attorney that US Bakery would not be assuming Svenhard's debts. *Id*. ¶ 74.

Accepting Svenhard's factual allegations as true, the first exception has not been sufficiently stated. From the context, in the Fall of 2019, the parties may have been negotiating a deal under which US Bakery would assume Svenhard's liabilities in exchange for a release of claims against US Bakery and Mountain. But such a release was never given, and such an agreement does not appear to have been reached. Further, even if Svenhard's were to contend that US Bakery made this promise unconditionally, that still would be insufficient for at least two reasons. First, such a promise would not appear to be supported by either consideration or

reasonable detrimental reliance, and neither is alleged in the FAC. Second, and more significantly, the alleged promise by US Bakery occurred five years after the 2014 asset purchase transaction at issue. The relevant question for purposes of the first exception is whether, as part of the asset purchase transaction in 2014, US Bakery expressly or impliedly agreed to assume the liabilities of Svenhard's. Svenhard's has not alleged any such agreement in 2014.

The second exception requires a transaction that "amounts to" a consolidation or merger of the two corporations (here, Svenhard's and US Bakery). In other words, was there a *de facto* merger? Not only has Svenhard's failed to allege facts showing that the transaction "amounted to" a consolidation or merger, or a *de facto* merger, the allegations, including the transaction documents referenced in the FAC, show precisely the opposite. The documents refer to the purchase of assets, including intellectual property. Also, both companies remained legally separate entities. *See Tyree Oil, Inc. v. Bureau of Lab. & Indus.*, 168 Or. App. 278, 283 (2000) (holding that a transaction did not amount to a consolidation or merger after a purchase of assets when two companies continue to exist as separate entities and have completely different ownership and management). Svenhard's also alleges that US Bakery later exercised "control" over the operations of Svenhard's, which Defendants deny, but even that does not, by itself, show a *de facto* consolidation or merger of the two corporations. In short, Svenhard's has failed to allege a *de facto* merger.

The third exception is when the purchasing corporation is a "mere continuation" of the selling corporation. Svenhard's argues that this scenario presents its strongest case for successor liability. The Oregon Supreme Court applied the "mere continuation" exception in *Portland Section of Council of Jewish Women v. Sisters of Charity of Providence in Oregon*, 266 Or. 448 (1973). In that case, the Oregon Supreme Court found a "mere continuation" when:

> The evidence indicates that the reason for the reincorporation was
> a technical limitation on the amount of assets which could be held
> by the old corporation. After the reincorporation, defendant took
> over the operation of the hospital and all assets connected
> therewith including whatever remained of plaintiff's $5,000 or
> whatever assets were purchased with it. Since the reincorporation
> was only a technical matter and was for the purpose of
> uninterruptedly carrying on the business of the old corporation, and
> since defendant took over all of its predecessor's assets and
> continued to honor the agreement, defendant is liable on the
> contract to the same extent as was its predecessor.

*Id*. at 453. The facts alleged in the pending lawsuit are not even remotely similar.

Svenhard's also invites the Court to consider, even if only for persuasive or explanatory purposes, the decision from the California Supreme Court in *Ray v. Alad Corp*., 19 Cal. 3d 22 (1977). In that case, the California Supreme Court stated:

> California decisions holding that a corporation acquiring the assets
> of another corporation is the latter's mere continuation and
> therefore liable for its debts have imposed such liability only upon
> a showing of one or both of the following factual elements: (1) no
> adequate consideration was given for the predecessor corporation's
> assets and made available for meeting the claims of its unsecured
> creditors; (2) one or more persons were officers, directors, or
> stockholders of both corporations.

*Id*. at 29. It is unclear what the *Ray* court meant by "no adequate consideration." It cannot mean, however, that a simple allegation of inadequate consideration, by itself, is enough to state a claim for successor liability under the "mere continuation" exception. If it did, then every unpaid creditor could, in theory, state a claim of successor liability against an asset purchaser merely by alleging inadequate consideration.

Svenhard's argues that it has sufficiently alleged both prongs: inadequate consideration and at least one officer, director, or stockholder in common. First, Svenhard's alleges that US Bakery paid "grossly inadequate consideration" for Svenhard's assets. FAC ¶¶ 18, 93. Second, Svenhard's alleges that US Bakery's CEO, Albers, was a Svenhard's "advisory board

member."[4] FAC ¶ 39. Thus, according to Svenhard's, it has sufficiently alleged successor liability under a theory of "mere continuation" by alleging both that US Bakery bought Svenhard's assets for allegedly "grossly inadequate consideration" and that at least one person (US Bakery's CEO, Albers) was an officer, director, or stockholder of both corporations.

Defendants respond that the allegation of inadequate consideration is merely conclusory as well as implausible. If by "inadequate consideration," Svenhard's merely means that it was in an economically difficult situation in 2014 and US Bakery, through hard bargaining, received a very good deal, that is not implausible. The real rub with Svenhard's "mere continuation" theory, in the Court's view, lies with the second prong.

According to one learned treatise: "The 'mere continuation' of business exception reinforces the policy of protecting the rights of a creditor by allowing it to recover from the successor corporation whenever the successor is substantially the same as the predecessor." 15 William Meade Fletcher, *et al*., Fletcher Cyclopedia of the Law of Private Corporations § 7124.10, at 301 (perm. ed., rev. vol. 1999). US Bakery is not substantially the same as Svenhard's.

Further, as noted by another scholar: "The *de facto* merger and 'mere continuation' bases do not differ significantly in their scope from each other." Marie T. Reilly, *Making Sense of Successor Liability*, 31 Hofstra L. Rev. 745, 747 n.7 (2003). Professor Reilly explains that "[a]t least one court has tried to differentiate between the bases." *Id*. (citing *Nat'l Gypsum Co. v. Cont'l. Brands Corp.*, 895 F. Supp. 328, 336 (D. Mass. 1995)) (noting that *de facto* merger

---

[4] Svenhard's also refers to Albers as a "former director of Svenhard's." FAC ¶ 7. Nothing else in the FAC, however, shows that Albers, besides being the CEO of US Bakery, was an actual "director" of Svenhard's in the legal sense of that word. At least without further pleading, the Court construes Svenhard's allegation to be merely that Albers merely held himself out to be an "advisory board member" of Svenhard's.

applies to situations where the ownership, control, and assets of one entity are combined with a preexisting entity; "mere continuation" applies when the selling corporation *sets up* a purchaser with the specific purpose of continuing the same business but with a *new* form (emphases in original)). Professor Reilly concludes that all three bases of successor liability (*de facto* merger, "mere continuation," and fraud) "serve the same purpose as fraudulent transfer law—protecting the transferor's creditors from the effect of a transfer that defrauds them." *Id*., at 749.

Viewed in this light, Svenhard's has failed to state a claim under the "mere continuation" exception. Svenhard's, as the selling corporation, did not set up a purchaser (US Bakery or Mountain). And Svenhard's did not do that with the specific purpose of continuing the same business but with a new form to defraud Svenhard's creditors. Thus, even if Albers, as the CEO of the purchasing entity, the transferee, would have taken an actual board seat on Svenhard's, that is not the sort of commonality that the "mere continuation" exception requires. The essence of fraudulent activity in the context of the "mere continuation" exception is when an owner, stockholder, director, or officer of the transferor (here, Svenhard's) participates in causing the transferor's assets to be sold below fair value to a transferee for the purpose of defrauding the transferor's creditors and benefitting that owner, stockholder, director, or officer, who is now part of an entity that has acquired valuable assets without paying fair value. Moreover, Svenhard's does not allege that Albers was on the board of Svenhard's (either actually or in an advisory capacity) when the original deal was struck.

Finally, Svenhard's asks the Court to consider the California appellate decision in *Cleveland v. Johnson*, 209 Cal. App. 4th 1315 (2012). In that case, the California Court of Appeals explained:

> [N]o single factual element, standing alone, would establish or negate successor liability. . . . The significant principle is that "if a

> corporation organizes another corporation with practically the
> same shareholders and directors, transfers all the assets but does
> not pay all the first corporation's debts, and continues to carry on
> the same business, the separate entities may be disregarded and the
> new corporation held liable for the obligations of the old."

*Id*. at 1334 (citation omitted). As Svenhard's notes, in *Cleveland*, the court held that "mere

continuation" of a corporation's unincorporated business line by a new corporation with nearly

the same management and the same ownership justified imposing successor liability. *Id*. at 1330.

The situation in *Cleveland*, however, bears no resemblance to the facts alleged here. Svenhard's,

as transferor, did not "organize" another corporation (US Bakery or Mountain), let alone do so

with "practically the same shareholders and directors" and then transfer its assets to that newly

organized corporation. Thus, *Cleveland* does not assist Svenhard's. For all these reasons,

Svenhard's fails to state a claim for successor liability under Oregon law.

**B.  Plaintiff's Second, Third, and Fourth Claims: Lender Liability and Fiduciary Duty**

In its second claim for relief, Svenhard's alleges "lender liability." Svenhard's alleges

that US Bakery "took advantage of Svenhard's weakened financial position and exercised

control over Svenhard's beyond that which occurs in a typical lender-debtor relationship."

FAC ¶ 102. Svenhard's adds that US Bakery "actively participated in Svenhard's business

beyond the actions of a lender" and "exercised control over all relevant aspects of Svenhard's

daily business operations, as well as over its long-term management decisions." FAC

¶¶ 103-104. In its third claim, Svenhard's alleges that US Bakery and Mountain "assumed

fiduciary obligations to Svenhard's as *de facto* control persons" and that US Bakerry "assumed

fiduciary obligations to Svenhard's as a controlling lender." FAC ¶ 114. In its fourth claim,

Svenhard's alleges that Albers, Petitt, and Hall aided and abetted US Bakery and Mountain in

breaching their fiduciary duties owed to Svenhard's. FAC ¶¶ 119-120.

Under Oregon law, the mere exercise of control over a corporation's affairs, whether as a lender or otherwise, does not impose fiduciary duties on the allegedly controlling parties. Rather, the existence of such duties depends on whether the parties are in a "special relationship," in which one party is obliged to pursue the other party's best interests. *See Conway v. Pacific University*, 324 Or. 231, 237 (1996) (stating that a special relationship exists when one party has agreed to act, at least in part, to further the economic interests of the other party). Svenhard's has failed to allege that Defendants agreed to act, at least in part, to further the economic interests of Svenhard's.

Svenhard's refers the Court to California law. Even if California law were to apply, that would not change the result. California, like Oregon, follows the general rule that lenders, when acting as lenders, do not owe borrowers any fiduciary duties. *See, e.g.*, *Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980) (holding that a bank is not required to put its customers' interests above its own). It is only when a lender, or anyone else, assumes through words or conduct a duty to protect the interest of another that such a person can become liable as a fiduciary who owes a duty of loyalty. Merely exercising some control over another is not enough; a defendant must put itself in a position where it has assumed a "special relationship," like the relationship between a principal and an agent or among partners. *See, e.g.*, *Bennett v. Farmers Ins. Co*., 332 Or. 138, 160, 26 P.3d 785 (2001) (stating that "unless plaintiff's relationship with . . . defendant qualifies as the type of 'special relationship' that gives rise to" a fiduciary duty, no breach of duty can have occurred); *see also City of Hope Nat'l Med. Ctr. v. Genetech, Inc*., 43 Cal. 4th 375, 386 (2008) ("[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a

relationship which imposes that undertaking as a matter of law." (citation omitted)). Svenhard's

has not sufficiently alleged a special relationship.

## C.  Plaintiff's Fifth Claim: Fraud

In its fifth claim, Svenhard's alleges that it was led to believe by Defendants' "overt

statements and concealment of facts that [US Bakery] would assume debts of Svenhard's,

including but not limited to, the Pension Fund withdrawal liability, trade payables, and certain

health insurance premium obligations for the unionized workforce." FAC ¶ 127. Svenhard's adds

that it "justifiably relied on the statements and omissions to its detriment." *Id*. at 128. The only

allegedly false statements that Svenhard's describes with particularity, however, are those

allegedly made by Albers in November 2019.

For claims sounding in fraud, Rule 9(b) of the Federal Rules of Civil Procedure sets a

heightened pleading requirement, such that a claim for fraudulent misrepresentation must state

the content of the allegedly false statements and "the time [and] place . . . of the false

representations as well as the identities of the parties to the misrepresentation." *Ramirez v.

Medtronic Inc.*, 961 F. Supp. 2d 977, 984 (D. Ariz. 2013) (quoting *Schreiber Distrib. Co. v.

Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "To satisfy Rule 9(b), a pleading

must identify the who, what, when, where, and how of the misconduct charged, as well as what

is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso

v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks omitted).[5]

Svenhard's has not alleged with particularity any false statements made by Defendants in 2014,

---

[5] Malice, intent, knowledge, and other conditions of a person's mind, however, may be
alleged generally. *See* Fed. R. Civ. P. 9(b).

any material omissions in 2014 when there was a duty to speak, or any fraudulent concealment.[6] Relatedly, Svenhard's has not plausibly alleged how it could have justifiably relied on any false statements allegedly made by Albers in 2019. Accordingly, Svenhard's has failed to state a claim for fraud.

### D.  Plaintiff's Sixth Claim: Conversion

In its sixth claim, Svenhard's alleges that "[o]n or about November 4, 2019, [US Bakery] and CCBC wrongfully, and without legal justification, took property of Svenhard's at the Exeter Property, including but not limited to computers, equipment, data, labels, inventory and supplies, and converted the same to their own use." FAC ¶ 130.

Under Oregon law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Scott v. Jackson County*, 244 Or. App. 484, 499 (2011) (quoting Restatement (Second) of Torts § 222A (1965)); *see also Mustola v. Toddy*, 253 Or. 658, 664 (1969). To state a claim for conversion under Oregon law, a plaintiff must allege that it was entitled to "immediate possession" of the "chattel" at issue. *Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 413 (1989) (quoting *Artman v. Ray*, 263 Or. 529, 531 (1972)) (alterations omitted); *see also Berry v. Blair*, 209 Or. 15, 18 (1956); Restatement (Second) of Torts § 225 ("Either the person in possession of the chattel at the time of the conversion or the person then entitled to its immediate possession may recover the full value of the chattel at the time and place of the conversion.").

---

[6] *See generally Unigestion Holdings, S.A. v. UPM Tech., Inc.*, --- F. Supp. 3d ---, 2022 WL 161491, at *11-12 (D. Or. Jan. 18, 2022) (describing Oregon law of fraud by affirmative representation, omission, or concealment).

Although Svenhard's challenges Defendants' exercise and timing of their self-help remedies in November 2019, Svenhard's does not challenge the fact that US Bakery had a lien on the allegedly converted property to secure the debts that Svenhard's owed to Defendants but had not paid. Further, even if Defendants were wrong to take possession in November 2019 of the property at issue, Defendants eventually would have been able to take possession of that property based on the lien. Svenhard's has not alleged that it could have used that property for any proper purpose in the meantime. Thus, Svenhard's has not sufficiently alleged conversion.

**E. Plaintiff's Seventh Claim: Rescission**

In its seventh claim, Svenhard's seeks a determination that the "**IP Purchase Agreement** and all related agreements are void *ab initio*, thereby rescinding the sale of the intellectual property assets and restoring of all of the intellectual property assets back to Svenhard's." FAC, at 33 (Prayer ¶ G).

The purpose of the remedy of rescission is to restore the parties as nearly as possible to their positions before the transaction took place. *Bodenhamer v. Patterson*, 278 Or. 367, 378 (1977). Rescission acts to "unwind the transaction" and place the parties in the positions they would have been had they not entered the transaction. *Daugherty v. Young*, 47 Or. App. 585, 591 (1980). The remedy of rescission is available when there is a defect in the formation of the contract. A defendant's false representation of a material fact, made with or without scienter, entitles the plaintiff to rescission. *Wilson v. Zimmerman/Soundarama*, 261 Or. 528, 529 n.1 (1972). A party induced to enter a contract by fraud may either affirm the contract and sue for damages or disaffirm or rescind the contract and be restored to the position that party was in before the contract was entered. *Amort v. Tupper*, 204 Or. 279, 285 (1955). Rescission of a contract based on a misrepresentation must be established by clear and convincing evidence. *Lesher v. Strid*, 165 Or. App. 34, 41-42 (2000). To obtain rescission based on a unilateral

mistake, requires that the mistake is material and basic to the agreement and that the other party must have known or, as a reasonable person, should have known of the mistake. *Gardner v. Meiling*, 280 Or. 665, 674-675 (1977). A mere unilateral misunderstanding does not justify rescission. *White v. Burt*, 114 Or. App. 476, 479 (1992).

Svenhard's alleges that it entered into the **IP Purchase Agreement** and the **License Agreement** in April 2014. FAC ¶ 133.[7] Svenhard's further alleges:

> 134.    At the time, Svenhard's was mistaken regarding whether [Mountain] was going to assume Svenhard's liabilities at the end of the License Period. At the inception of the agreements, and under immense time pressure caused by the defendants for their own purposes, and by insisting that Svenhard's not file for bankruptcy protection at that time, [Mountain] and [US Bakery] led Svenhard's to believe that [Mountain] or [US Bakery] (or both) would step in and pay Svenhard's liabilities at the end of the License Period.

> 135.    [Mountain] and [US Bakery], through defendant Albers, stated to Svenhard's as recently as September 2019 that [Mountain] or [US Bakery] (or both) would satisfy creditor obligations of Svenhard's. None of the transactional documents state otherwise. Svenhard's did not learn until late October 2019 that [Mountain] and [US Bakery] had no intention to satisfy any liabilities of Svenhard's.

> 136.    The IP PURCHASE AGREEMENT and all related agreements are subject to unilateral rescission because Svenhard's consent was given by mistake and through [Mountain] and [US Bakery's] fraud and though the connivance of [Mountain] and [US Bakery's] officers, including defendant Albers. Defendant Albers had knowledge of [Mountain] and [US Bakery's] wrongdoing before [Mountain] paid consideration under the IP PURCHASE AGREEMENT.

---

[7] Although the **IP Purchase Agreement** is dated April 25, 2014 (ECF 27-1 at 9), the **License Agreement** has an "effective date" of August 1, 2014 (ECF 27-1 at 17). Whether the latter agreement was entered in April or August 2014 is not relevant to the pending motion.

> 137. Svenhard's seeks rescission of the IP PURCHASE
> AGREEMENT, and all related agreements, and the restoration to
> Svenhard's of all intellectual property rights transferred to MSB.

FAC ¶¶ 134-137.

In summary, Svenhard's contends that the Court should exercise its equitable power to rescind the 2014 transactions based either on Defendants' fraud or a reasonable mistake by Svenhard's about Defendants' intent not to assume any liabilities at the end of the license period. FAC ¶¶ 103-105. Svenhard's has failed to state a claim for rescission.

As discussed, Svenhard's has failed to plead fraud with the requisite particularity. Svenhard's also must plead "mistake" with the same particularity that it must plead fraud. Fed. R. Civ. P. 9(b). The 2014 transaction documents to which Svenhard's refers in its First Amended Complaint show an asset sale and leaseback with no express or implied obligation to assume liabilities. Thus, if Svenhard's is to state a claim for rescission based on mistake, it must plead with particularity the basis of that mistake and its own reasonable reliance. As with its fraud claim, allegations of what Albers supposedly said in 2019 does not show the basis for, or reasonableness of, any mistake by Svenhard's in 2014. As noted, to void a contract *ab initio*, a plaintiff must point to something at the *formation* of the contract that justifies rescission. Svenhard's has not done so.

**F.  Plaintiff's Eighth Claim: Violation of California Business & Professions Code § 17200**

In its eighth claim, Svenhard's alleges that the conduct of US Bakery, Mountain, and CCBC "is unlawful, unfair and fraudulent within the meaning of [California's] Business and Professions Code Section 17200*, et seq.*" FAC ¶ 139. As relief, Svenhard's seeks "rescission of the sale of the intellectual property assets and restitution of all of the intellectual property assets back to Svenhard's." FAC, at 34 (Prayer ¶ I).

PAGE 22 – OPINION AND ORDER

Division 7, Part 2, Chapter 5 of the California Business and Professions Code provides for the enforcement of California's rules to preserve and regulate competition. Section 17200 provides:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

Cal. Bus. & Prof. Code § 17200.

In response to Defendants' motion to dismiss, Svenhard's admits that California Business and Professions Code § 17200 differs from Oregon's Unlawful Trade Practices Act (UTPA), ORS § 646.605-646.656, and that "Oregon's statute does not offer private plaintiffs a cause of action for 'any other unfair or deceptive conduct in trade or commerce' unless the Attorney General first establishes a rule declaring specific conduct as unfair or deceptive.'" ECF 31 at 17-18. Thus, because the Court has determined that Oregon law, and not California law, applies, Svenhard's has not stated a statutory claim upon which relief can be granted.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss (ECF 27) and gives Plaintiff leave to replead within fourteen days from the date of this decision.

**IT IS SO ORDERED**.

DATED this 29th day of June, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge